UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE LABOY O/B/O ASC,                     **DECISION AND ORDER**

                              Plaintiff,                           1:18-CV-00825(JJM)

v.

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

                             Defendant.
_____

         This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff's minor child was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 15].[2] The parties have consented to my jurisdiction [19]. Having reviewed the parties' submissions [8, 15, 18], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

         On February 2, 2015, plaintiff applied for SSI on ASC's behalf, alleging an onset date of February 2, 2015 due to "[s]peech problems" and "special education". Administrative Record [7], pp. 165, 189. At that time, ASC was two years old. Id., p. 165. The application was

---

[1]    On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, and is automatically substituted as the named defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]    Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

denied on June 22, 2015. Id., p. 111. An administrative hearing was conducted before Administrative Law Judge ("ALJ") Mary Mattimore on June 9, 2017 at which plaintiff and ASC testified. Id., pp. 37-100.

In her November 22, 2017 decision, ALJ Mattimore determined that plaintiff had a severe speech and language impairment. Id., p. 13. She also found that ASC did not have a impairment or combination of impairments that equaled or functionally equaled a listed impairment. Id., p. 14. Specifically, ALJ Mattimore concluded that ASC had a marked limitation in the domain of interacting and relating with others, had less than a marked limitation in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, but no limitation in the remaining domains. Id., pp. 17-23. Since ASC did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, ALJ Mattimore concluded that she was not disabled from February 2, 2015 through the date of her November 22, 2017 decision. Id., p. 23.

The opinion evidence before ALJ Mattimore included the June 22, 2015 state agency review opinion of Dr. J. Meyer, [3] who concluded that ASC had the domain limitations ultimately found by the ALJ. Id., pp. 101-08. This opinion was given significant weight by ALJ Mattimore. Id., p. 16. She also afforded significant weight to the June 11, 2015 report of Amy Atwater, M.S., CCC-SLP, the speech and language consultative examiner, who opined that ASC had "a mild functional expressive language delay, and at least mildly delayed articulation skills". Id., pp. 16, 342-46. Likewise, significant weight was afforded to the July 2017 teacher

---

[3] Dr. Meyer's first name and specialty are not apparent from the record.

questionnaire from Beyond Boundaries, which stated, *inter alia*, that "[i]n school, [ASC] is compliant. At home, she is self directed and defiant". Id., pp. 16, 610-16.[4]

By contrast, ALJ Mattimore gave only "moderate weight" to the April 30, 2015 teacher questionnaire completed by Tracy Johnson, which stated, *inter alia*, that [ASC] "has difficulty following directions + complying with adult requests. She tends to be self-directed". Ms. Johnson assessed ASC as having "a very serious problem" with expressing anger appropriately. Id., pp. 16, 307-17. ALJ Mattimore afforded "some weight" to the more recent May 12, 2017 opinion of Mary Francis Bayer, LMSW, that ASC "presents [with] controlling and anxious behaviors". Despite working with ASC for the prior two years, Ms. Bayer noted that she remains "rigid and controlling". Id., pp. 16, 560-63.

The Appeals Council denied plaintiff's request for review (id., pp. 1-4), and thereafter she commenced this action.

**DISCUSSION**

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

---

[4]    The questionnaire, which was sent to the ALJ on July 26, 2017, is undated and unsigned.

B.  **Infant Disability Standard**

A claimant under 18 years of age, such as ASC, is "disabled" under the Social Security Act if she has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the applicable regulations, ASC must show that she is not working, that she has a "severe" impairment or combination of impairments, and that the impairment or combination of impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain constitutes a functional equivalent to a listed impairment. Id. § 416.926a(d). "Marked" limitation for a domain is when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i).

C.  **Did ALJ Mattimore Fail to Develop the Record?**

"Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty to develop the record exists even when the claimant is

represented by counsel." Munerlyn v. Colvin, 203 F. Supp. 3d 253, 263–64 (W.D.N.Y. 2016); Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Notwithstanding the ALJ's duty to develop the record, it remains the claimant's burden to "prove to [the Social Security Administration] that [she is] . . . disabled". 20 C.F.R. § 404.1512(a)(1). Hence, the claimant must "inform [the Administration] about or submit all evidence known to [her] that relates to whether or not [she is] . . . disabled". Id. If there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in advance of rejecting a benefits claim". Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).

Plaintiff makes several arguments as to why ALJ Mattimore failed to develop the record concerning ASC's behavioral problems, which she contends were not apparent when the SSI application was filed. Plaintiff's Memorandum of Law [8-1], p. 9. First, she argues that a consultative examination was necessary because there was no medical opinion of record which addressed ASC's behavioral issues. Id., pp. 9, 11. "[T]he ALJ may be required to order a consultative examination when necessary to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the ALJ to make a determination or decision on the claim." Roscoe v. Berryhill, 2018 WL 4519880, *6 (W.D.N.Y. 2018) (emphasis omitted). See 20 C.F.R. § 404.1512(f) ("[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense"). "It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Id.

In support of her argument that a consultative "intelligence examination" was necessary, plaintiff points to the fact that ALJ Mattimore herself "seemed to imply [at the hearing] that a consultative examination would be appropriate, given what she had seen at hearing". Id., pp. 9, 13. However, that is not borne out by the record.

Shortly before the hearing, plaintiff's counsel submitted a June 6, 2017 letter to the ALJ explaining that in May 2014, Erie County Early Intervention described ASC as "rough, hyper", and that her social and emotional skills were only at a 24-month old level. [7], p. 231. Plaintiff's counsel noted that ASC had been receiving counseling for the previous two years with Ms. Bayer, and that he was trying to obtain a teacher questionnaire from her. Id., p. 232. Counsel also stated that a "consultative examination is . . . necessary to determine whether these problems constitute a medically determinable impairment, and to shed guidance on the scope of that impairment". Id.

At plaintiff's counsel's request at the June 9, 2017 hearing, ALJ Mattimore held the hearing open for 14 days for plaintiff to submit records from Ms. Bayer. [7], pp. 44-47, 99-100. The ALJ made clear that "after I get the records you're talking about, [I will] make a determination on your request for a [consultative examination], okay?" Id., p. 47. Therefore, ALJ Mattimore expressed no opinion (tacitly or implicitly) as to whether a consultative examination was necessary.

Nor does the record suggest that a consultative examination was necessary. Ms. Atwater opined that ASC's communication difficulties "may adversely affect her social functioning". [7], p. 345.[5] There is nothing in the record to suggest that her behavioral issues

---

[5] Contrary to plaintiff, ALJ Mattimore did not use her lay judgment to conclude that ASC's behavioral issues arose "from frustration with her communication skills" ([7], p. 15), as opposed to "another psychological pathology". Plaintiff's Memorandum of Law [8-1], p. 12. Specifically, ALJ

-6-

were linked to any impairment other than her speech and language impairment. In fact, none of ASC's teachers or counselors referred her (or suggested the need) for any diagnostic testing related to her behavioral issues.

Plaintiff also appears to argue that ALJ Mattimore failed to develop the record by not obtaining Ms. Bayer's records. *See* Plaintiff's Reply Brief [18], p. 2 of 3 (CM/ECF). I disagree. When the records were not submitted following the hearing, ALJ Mattimore sent counsel a July 17, 2017 letter reminder. Id., p. 233. Yet, the records were never submitted, and it does not appear that counsel requested ALJ Mattimore's assistance in obtaining them. However, as the Commissioner notes, and plaintiff fails to dispute, the record did contain Ms. Bayer's most recent treatment notes from 2016 through 2017 which showed improvement. Commissioner's Brief [15-1], pp. 19-20, citing [7], pp. 16, 443-68. Additionally, ALJ Mattimore had the benefit of Ms. Bayer's May 12, 2017 Mental Residual Functional Capacity Questionnaire. [7], pp. 560-63.

Under these circumstances, ALJ Mattimore did not fail to develop the record. *See* Smith v. Saul, 2019 WL 2537297, *6 (W.D.N.Y. 2019) ("[g]enerally, the ALJ's duty to develop the record is satisfied where, as here, the ALJ keeps the record open to receive further evidence after the administrative hearing but the Plaintiff fails to provide such evidence nor requests the ALJ's assistance in obtaining the records"); Edwards v. Berryhill, 2019 WL 2340953, *4 (W.D.N.Y. 2019) ("an ALJ's duty to affirmatively develop the record is discharged when the ALJ agrees to hold the record open to permit the claimant's counsel, who volunteers to do so, to

---

Mattimore pointed to CE Atwater's opinion that ASC's mildly delayed "functional expressive language and articulation . . . may adversely affect social functioning". [7], p. 16.

obtain additional relevant records, with the caveat that if counsel fails to provide the records within a specified period of time, the ALJ's decision would be made based on the existing record"). *See also* Jordan v. Commissioner of Social Security, 142 Fed. App'x 542, 543 (2d Cir. 2005) (Summary Order) (the ALJ did not fail to discharge his duty to develop the record where he "did not contact or obtain records from Dr. Arena, a treating physician whom Jordan mentioned at his hearing: [i] Jordan's counsel volunteered to secure Dr. Arena's records; [ii] the ALJ kept the record open to allow counsel to do so, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; [iii] counsel subsequently contacted the Social Security to advise it that Jordan had 'nothing further to add' to the record; and [iv] Jordan did not request the ALJ's assistance in contacting or securing evidence from Dr. Arena").

Finally, plaintiff argues that Dr. Meyer's June 22, 2015 opinion, to which ALJ Mattimore afforded significant weight, was stale because Dr. Meyer did not have a "full longitudinal picture of ASC's behavior". Plaintiff's Memorandum of Law [8-1], pp. 11-12. I disagree. "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes '*significant deterioration*' after a consultative examination, the examination may not constitute substantial evidence" (emphasis added)); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same). "A medical

opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.

Dr. Meyer opined that ASC had a marked limitation in the domain of interacting and relating with others. [7], p. 105. The subsequent medical opinion evidence, to which ALJ Mattimore afforded weight, failed to demonstrate any significant deterioration in that domain. In fact, the most recent record, the July 2017 questionnaire completed by a teacher with Beyond Boundaries who saw ASC weekly for IEP counseling over the previous 18 months, indicated that ASC's behavioral issues were controllable. Specifically, the questionnaire stated that while ASC remained "self-directed and defiant" at home, she was "compliant" at school. Id., p. 613. As ALJ Mattimore also explained, Ms. Bayer's notes from ASC's "therapy sessions in 2016 and 2017 revealed good progress in the claimant's managing of her rigid behavior, more success at school, with difficulty adjusting to stresses at home". Id., p. 16. Therefore, I conclude that ALJ Mattimore did not have a duty to further develop the record.

**D.      Was ALJ Mattimore's Finding that ASC Had Less Than a Marked Limitation in the Ability to Care for Herself Supported by Substantial Evidence?**

"The Caring for Yourself domain considers how well a child maintains a healthy emotional and physical state, including how well he gets his needs met, how he copes with stress, and whether he takes care of his own health, possessions, and living area." Clark ex rel. L.R.S. v. Astrue, 2012 WL 3765046, *7 (S.D.N.Y. 2012). See 20 C.F.R. § 416.926a(k); 20 C.F.R. § 416.926a(k)(2)(ii),(iii) (age group descriptors). Relevant here, for older infants and toddlers (age 1 to attainment of age 3), the domain of caring for oneself requires the following:

"[Y]ou should be trying to do more things for yourself that increase your
sense of independence and competence in your environment. You might
console yourself by carrying a favorite blanket with you everywhere. You
should be learning to cooperate with your caregivers when they take care
of your physical needs, but you should also want to show what you can do;
e.g., pointing to the bathroom, pulling off your coat. You should be
experimenting with your independence by showing some degree of contrariness (e.g.,
'No! No!') and identity (e.g., hoarding your toys)." 20 C.F.R. §416.926a(k)(2)(ii).

When they become a preschool child (age 3 to attainment of age 6), the domain requires the following:

"You should want to take care of many of your physical needs by yourself
(e.g., putting on your shoes, getting a snack), and also want to try doing some
things that you cannot do fully (e.g., tying your shoes, climbing on a chair to
reach something up high, taking a bath). Early in this age range, it may be easy
for you to agree to do what your caregiver asks. Later, that may be difficult for
you because you want to do things your way or not at all. These changes
usually mean that you are more confident about your ideas and what you are
able to do. You should also begin to understand how to control behaviors that
are not good for you (e.g., crossing the street without an adult)." Id.,
§416.926a(k)(2)(iii).

In concluding that ASC had less than a marked limitation in this domain, ALJ Mattimore explained that "Ms. Laboy reported the claimant's attitude was over place (*sic*), that she would stay up all night on weekends, and would refuse food but sneakily eat chocolate . . . . Through the record, the claimant exhibited some problems and frustration being patient and appropriately asserting emotional needs, but these improved with therapy and age; her social and emotional level is noted to be OK on an individualized education program (IEP) in November 2014 . . . . Dr. Meyer opined a less than marked limitation in this domain, which relies on the academic reporting of her difficulty coping in the school environment." [7], p. 22.

Plaintiff argues that neither factor relied upon by ALJ Mattimore - the November 2014 IEP nor Dr. Meyer's opinion - amounted to substantial evidence to support a finding of a

less than marked limitation in that domain. Plaintiff's Memorandum of Law [8-1], p. 13. I disagree.

As plaintiff acknowledges, the November 2014 IEP found that ASC's adaptive development (*e.g.*, self-help, feeding, dressing, etc.) was within normal limits [7], pp. 408, 412. Although plaintiff argues that the November 2014 IEP became stale as ASC's behavioral and self-care issues became "more prominent beginning in April 2015" (plaintiff's Memorandum of Law [8-1], p. 14), that is belied by the July 2017 questionnaire completed by ASC's Beyond Boundaries teacher, which assessed ASC with no limitation in caring for herself. [7], p. 615.[6] As discussed above, that same questionnaire indicated that ASC's behavioral issues were also controllable. Id., p. 613. As ALJ Mattimore further explained, "therapy sessions in 2016 and 2017 revealed good progress in the claimant's managing of her rigid behavior, more success at school, with difficulty adjusting to stresses at home". Id., p. 16.

Although ASC continued to have at least some behavioral problems (s*ee, e.g.,* id., p. 563 (ASC "is defiant at home")), ALJ Mattimore accounted for that issue by finding that she had a marked limitation in interacting and relating with others. [7], p. 20. *See* D.L.K. by Brink v. Commissioner of Social Security, 2017 WL 1843277, *5 (N.D.N.Y. 2017) ("[t]o be sure, evidence indicated that Claimant had problems interacting with others; however, the ALJ accounted for those problems in the domain of interacting and relating with others", rather than in the domain of caring for oneself"). "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that *no reasonable*

---

[6] Further bolstering that ASC had less than a marked limitation in caring for herself, plaintiff testified that ASC could largely dress herself, no problem eating with a fork/spoon, knows about hazards, and can walk, jump, run and climb. [7], pp. 56-57. The only deficiency noted was ASC's unwillingness to wipe after using the toilet. Id.

*factfinder could have reached the ALJ's conclusions based on the evidence in record.*" Dailey v. Commissioner of Social Security, 2016 WL 922261, *6 (N.D.N.Y.), adopted, 2016 WL 917941 (N.D.N.Y. 2016) (emphasis added); Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) ("[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*'" (emphasis in original)).

Judged against that standard, I conclude that even if ALJ Mattimore's reliance on Dr. Meyer's opinion did not amount to substantial evidence, the November 2014 IEP and the remaining evidence discussed above constituted substantial evidence supportive of ALJ Mattimore's determination that ASC had less than a marked limitation in the domain of caring for oneself. *See* White o/b/o T.R.W. v. Berryhill, 2019 WL 1367382, *8 (W.D.N.Y. 2019) ("I find that the ALJ's discussion of the record evidence permits this Court to review her rationale for finding that T.R.W. has less than marked limitations in the domain of self-care, and that her rationale was reasonable and supported by substantial evidence"); D.L.K. by Brink, 2017 WL 1843277, *5 ("although Claimant had some degree of difficulty in [the domain of caring for oneself], the ALJ's determination is supported by substantial evidence in the record. The record indicates that Claimant could care for his physical needs such as hygiene and eating. The record contains notations that Claimant struggled in coping with stress at home; however, medication and therapy were helping him implement coping skills which were apparent in therapy and school").

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [15] is granted, and plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: December 3, 2019

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge